**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 22 2014, 10:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SCOTT GREENIER | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1312-CR-602 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Helen Marchal, Judge
Cause No. 49G16-1306-FD-39347

**July 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Scott Greenier appeals his conviction for battery as a class B misdemeanor. Greenier raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

FACTS AND PROCEDURAL HISTORY

On June 16, 2013, Greenier had an altercation with his wife Vivian. Vivian ran from her house across the street and near to a fence in her neighbor's yard, fell to the ground, and was sobbing. Greenier followed her in a brisk walk. One of Vivian's neighbors asked her if everything was okay. Greenier, who had an angry demeanor, walked to Vivian and pulled her up by her arm, and forcefully walked and pulled her back across the street. Greenier "was literally like pulling her," and Vivian was "walking in a sideways stance," "was being held by her arm [and] drug across the street," and was "moving her feet so she wasn't falling on the ground." Transcript at 60, 63, 92. Greenier pulled Vivian up the stairs, they went inside their house, and the door slammed. Two neighbors heard yelling coming from inside the Greeniers' house, and one of the neighbors called the police.

Indianapolis Metropolitan Police Officer Peter Tomlinson responded to the call and arrived at the Greeniers' house within about three or four minutes. Officer Tomlinson approached the house together with a park ranger. As the park ranger went to the front door, Officer Tomlinson went around the house on the grass and heard through the kitchen window "yelling and a series of thuds and smacks." Id. at 111. Officer Tomlinson heard "an adult male voice" in "an angry growling tone, very elevated in volume" and heard the man say "[y]ou stupid b----." Id. Officer Tomlinson believed,

2

based upon his experience and the sounds he heard, that the sound was of a physical altercation. He heard an adult female voice, which was "very scared and shaky, trembling" say "please stop." Id. at 114. Officer Tomlinson was unable to see into the house due to the height of the kitchen window.

Officer Tomlinson yelled to the park ranger that he believed the woman inside was being hit, the ranger kicked the front door one or two times in an attempt to force entry into the residence, and at that point Greenier abruptly opened the door. Before being asked a question, Greenier stated he had not done anything wrong and "She is upset. She bites herself." Id. at 116. Officer Tomlinson observed that there were no signs that anything had been thrown or knocked over, and that Vivian's demeanor was "[v]ery scared, trembling, reluctant to answer any questions, visibly shaken." Id. at 118. Officer Tomlinson asked Vivian if she needed medics, and she said no. After speaking with the neighbors, Greenier was placed under arrest and in a Marion County Sheriff's wagon to transport him to the processing center, and inside the wagon Greenier became irate, made the whole van rock back and forth, and yelled that he had not done anything, that "[t]his is your fault," and that he "need[ed] to get out of here." Id. at 123.

On June 17, 2013, the State charged Greenier with criminal confinement as a class D felony and battery as a class B misdemeanor. On November 14, 2013, a jury trial was conducted at which the jury heard the testimony of Officer Tomlinson and two of the Greeniers' neighbors. The jury found Greenier not guilty of criminal confinement as a class D felony and guilty of battery as a class B misdemeanor. The court sentenced Greenier to 180 days with 174 days suspended to probation.

DISCUSSION

The issue is whether the evidence is sufficient to sustain Greenier's conviction for battery as a class B misdemeanor. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

The offense of battery as a class B misdemeanor was governed at the time of the offense by Ind. Code § 35-42-2-1(a), which provided that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor." Ind. Code § 35-42-2-1 (2009) (subsequently amended by Pub. L. No. 147-2014, § 2 (eff. Jul. 1, 2014)). The State was required to prove beyond a reasonable doubt that Greenier knowingly touched Vivian in a rude, insolent, or angry manner. "Any touching, however slight, may constitute battery." Mathis v. State, 859 N.E.2d 1275, 1281 (Ind. Ct. App. 2007).

Greenier argues that the neighbors witnessed the dispute outside between Vivian and him in which he wanted her to "get herself together, to get up off the ground, and to get inside," that the neighbors testified they saw him forcefully escort her back, that she did not resist or ask for help, that he did not cause her to fall, and notes that the jury acquitted him of the confinement charge. Appellant's Brief at 6. Greenier further argues that neither the neighbors nor the officer saw what happened inside, that Officer

4

Tomlinson heard arguing and noises but did not know what caused them, and that Officer Tomlinson saw no evidence of a struggle. Greenier states that Vivian "wore a brace and bandages, but had no fresh injuries" and that she declined medical help. Id. at 7. He asserts that the neighbors saw the argument outside and misinterpreted and speculated about what occurred inside, that the officer assumed he heard thuds and smacks of skin-on-skin contact, and that, if there were hits, it is unknown who hit whom. The State maintains it was reasonable for the jury to conclude that Greenier battered Vivian when he grabbed her arm and dragged her forcefully back inside their house. The State also points to testimony that Officer Tomlinson heard yelling and a series of thuds and smacks and that it was reasonable for the jury to infer from the sounds in context that Greenier continued to batter Vivian inside their house.

The evidence as set forth above and in the record reveals that the State elicited testimony from the Greeniers' neighbors that Vivian ran across the street and fell down sobbing, and that Greenier, who had an angry demeanor, followed her in a brisk walk, pulled her up by the arm, and forcefully pulled her back across the street. Officer Tomlinson heard Greenier yelling at Vivian in an angry tone and heard "a series of thuds and smacks" he believed was a physical altercation and believed was the result of Greenier striking Vivian. Transcript at 111. Based upon the testimony most favorable to the conviction, we conclude that sufficient evidence exists from which the jury could find Greenier guilty beyond a reasonable doubt of battery as a class B misdemeanor.

CONCLUSION

5

For the foregoing reasons, we affirm Greenier's conviction for battery as a class B misdemeanor.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.